IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20262
_____


BRIARGROVE SHOPPING CENTER JOINT
VENTURE,

                    Plaintiff - Counter Defendant - Appellee,

                         versus

PILGRIM ENTERPRISES, INC., ET AL.,

                                        Defendants,

PILGRIM ENTERPRISES, INC.; PILGRIM
LAUNDRY COMPANY, INC.; PILGRIM
EQUIPMENT CO., INC.,

                    Defendants - Counter Claimants - Appellants.
_____

Appeal from the United States District Court for the
Southern District of Texas
_____
April 7, 1999

Before JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Pilgrim Enterprises, Inc.[1] appeals from a judgment that assessed response costs and damages against Pilgrim in a claim asserted by Briargrove Shopping Center Joint Venture ("Briargrove") under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C.A. §§ 9601-9675 (West 1995 &

_____

[1]Technically, three parties are before us on appeal:  Pilgrim Enterprises, Inc., Pilgrim Laundry Co., Inc., and Pilgrim Equipment Co., Inc.  We refer to these parties collectively as "Pilgrim."

Supp. 1998). Although the district court labeled its judgment "Final," there remained various other claims and cross-claims that had not been decided. Furthermore, there was no certification of this CERCLA judgment for appeal under Rule 54(b) of the Federal Rules of Civil Procedure. Because this judgment appealed from is neither final, nor certified, we conclude that we lack appellate jurisdiction and therefore dismiss the appeal.

I

Briargrove owned a shopping center and leased property in that shopping center to Pilgrim. Pilgrim operated a dry cleaning business on the land for a number of years before its lease terminated in 1979. Fifteen years later, in 1994, Briargrove sought a loan backed by a mortgage on the shopping center. To secure the loan Briargrove needed an environmental assessment of its property. Briargrove hired an independent laboratory for this purpose, and its investigation revealed that the property was contaminated with perchloroethylene (commonly referred to as "perc"). Briargrove sued Pilgrim under CERCLA, alleging that Pilgrim is the party responsible for releasing perc onto the land. Briargrove also alleged a variety of state law claims including negligence, negligence per se, nuisance and trespass. Pilgrim filed several counterclaims based on state common and statutory law.

II

After hearing arguments and reviewing evidence, the district court issued a "Declaratory Judgment" on January 22, 1998. This declaratory judgment addressed only the CERCLA claims and declared that Pilgrim was liable "for response costs and damages associated with any 'clean-up' and remediation costs associated with the Briargrove Shopping Center property." The same day the court issued the declaratory judgment, it also entered a "Final Judgment," captioned as such, which read in full:

> Pursuant to the findings entered in this case and 42 U.S.C. § 96(3)(g)(2), (section 113 of CERCLA) the Court DECLARES that Pilgrim is liable for response costs and damages associated with any "clean-up" and remediation costs associated with the Briargrove Shopping Center property.
> This is a Final Judgment.

Pilgrim subsequently filed a motion to amend the judgment, requesting that the district court alter its findings of fact and analysis of law; the district court denied the motion. Briargrove then filed a motion requesting the court to aid the enforcement of its judgment by issuing a "turnover order" according to Texas' practice and procedure. See Fed. R. Civ. P. 69(a). In response, Pilgrim asked the district court to approve a supersedeas bond. The court approved the bond and further ordered that "all execution upon [the court's] Declaratory Judgment and Final Judgment . . . are stayed pending appeal in front of the Fifth Circuit Court of Appeals." This order did not state whether the court contemplated

3

an immediate appeal or an appeal following the disposition of the various other claims and counterclaims.

### III

Our court is one of limited jurisdiction.  We have authority to hear appeals only from "final decisions" under 28 U.S.C. § 1291, interlocutory decisions under 28 U.S.C. § 1292, nonfinal judgments certified as final under to Fed. R. Civ. P. 54(b),[2] or some other nonfinal order or judgment to which an exception applies (none apply here).[3]  We have said that "[a] decision is final when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  Askanase v. Livingwell, Inc., 981 F.2d 807, 810 (5th Cir. 1993) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978)).  Clearly, the district court in this case has not rendered a "final decision" nor entered a final judgment as that phrase is understood for § 1291 purposes.

Therefore, we must consider whether the district court has certified its judgment for appeal under Rule 54(b) so that we have authority to hear an appeal from a decision that "adjudicates fewer

---

[2]See Witherspoon v. White, 111 F.3d 399, 402 (5th Cir. 1997) (recognizing that "a decision failing to adjudicate the rights and liabilities of all parties, while not technically final, can be certified as final pursuant to Federal Rule of Civil Procedure 54(b)").

[3]See generally 15A Charles A. Wright, et al., Federal Practice and Procedure §§ 3911-3913 (2d ed. 1991).

than all the claims." Fed. R. Civ. P. 54(b). Rule 54(b) states, in relevant part, the following:

> When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . , and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims . . . .

As both the rule's text and the Supreme Court have made clear, a district court deciding whether to certify a judgment under Rule 54(b) must make two determinations. See Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7-8 (1980). First, the district court must determine that "it is dealing with a 'final judgment.'" Id. at 7. The judgment is final if "it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Id. at 7 (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)). The second determination the district court must make is whether any just reason for delay exists. Curtiss-Wright Corp., 446 U.S. at 8. According to the text of Rule 54, this determination must be made expressly.

Our court has, however, placed a gloss on the language of Rule 54(b). Although the rule requires "an express determination that there is no just reason for delay," we have said that a district

5

court's judgment meets the requirements of the rule if it satisfies the following standard:

> If the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable. We do not require the judge to mechanically recite the words "no just reason for delay."

Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc). The intent must be unmistakable; the intent must appear from the order or from documents referenced in the order; we can look nowhere else to find such intent, nor can we speculate on the thought process of the district judge. In the instant case, the only other portions of the record referred to by the order appealed from (the "Final Judgment" entered on January 22, 1998) are the "findings entered in this case." Those findings are contained in the "Declaratory Judgment." Thus, under Kelly, we are required to look for the district court's intent only in the Final Judgment and the Declaratory Judgment.

Neither of those documents, either separately or taken together, exhibits an "unmistakable intent to enter a partial final judgment under Rule 54(b)." Kelly, 908 F.2d at 1220. Unlike the facts in Kelly, the district court nowhere mentions Rule 54(b).[4]

---

[4]In Kelly, the district court captioned the order appealed from with the title "F.R.C.P. 54(b) JUDGMENT" and directed "that there be final judgment entered pursuant to Federal Rule of Civil

And in further contrast with the Kelly facts, neither of the parties in the instant case submitted a motion mentioning Rule 54(b) to the district court. Id. (noting that one of the parties submitted a motion for the court to amend its order "pursuant to Rule 54(b)").

Furthermore, the district court in this case did not issue any orders or memoranda discussing the substantive concerns surrounding a Rule 54(b) certification.[5] Proper consideration of these concerns requires the district court to act as a "dispatcher," Curtiss-Wright Corp., 446 U.S. at 8, and to "weigh a variety of factors to determine whether [its] disposition is appropriate for

Procedure 54(b) . . . ." Kelly, 908 F.2d at 1221.

[5]For example, one Rule 54(b) concern in this case would be "whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." Curtiss-Wright Corp., 446 U.S. at 8. In this case, it is not clear whether this concern would weigh in favor of certifying the appeal under Rule 54(b). The concern might cut against certification because one of the parties may end up seeking review of the district court's resolution of some questions of fact related to the state law claims and counterclaims. Those facts may (or may not) bear upon the CERCLA issues presented to us in this appeal. For example, Pilgrim contends that release of the perc may have occurred through the sewer system maintained by Briargrove. Pilgrim further contends that this fact should play a role in allocating damages and that the district court mistakenly cast some of those damages as CERCLA costs to be born by Pilgrim. We obviously make no judgment as to the validity of these arguments, but it does appear that fact issues underlying the unresolved state claims may interrelate with the CERCLA claims. In any event, this is a call for the district court to make in its role as "dispatcher." Until it makes a proper Rule 54(b) determination, we cannot have jurisdiction over the CERCLA claims presented to us.

7

Rule 54(b) certification." Ackerman v. Federal Deposit Ins. Corp., 973 F.2d 1221, 1224 (5th Cir. 1992). Before the district court can justify certifying its judgment for appeal under Rule 54(b), it must find that at least some of those factors combine to outweigh the important concerns that underlie "the historic federal policy against piecemeal appeals." Curtiss-Wright Corp., 446 U.S. at 8 (quoting Sears, Roebuck & Co., 351 U.S. at 438). In this case, the record reveals no consideration of such factors.

The fact that the district court labeled its order as a "Final Judgment" does not suffice to make that order appealable under Rule 54(b). The label does not indicate any intent by the district court that the order should be immediately appealable. Cf. Curtiss-Wright Corp., 446 U.S. at 8 ("Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."). This understanding comports with the text of Rule 54(b), which states that any order, "however designated," does not terminate the action as to any claims when the court has not made a determination that there is no just reason for delay of the appeal. More importantly, our court recently has held that the mere act of labeling an order as a "Final Judgment" is insufficient evidence that the district court intended to certify the order under Rule 54(b). Witherspoon v. White, 111 F.3d 399, 403 (5th Cir. 1997); see also Askanase, 981 F.2d at 810 (concluding that the

8

court lacked jurisdiction even though the district court indicated that the order was "appealable"). Although we do not require the mechanical recitation of Rule 54(b), Kelly, 908 F.2d at 1220, what we do require is a showing of an "unmistakable intent" to enter the judgment under Rule 54(b).

Finally, Pilgrim urges us to consider the district court's order approving the supersedeas bond as evidence that the district court intended for its judgment to be immediately appealable. We cannot do so, however, because this order was not referenced in the order appealed from. See Kelly, 908 F.2d at 1220 ("If the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable.") (emphasis added). Furthermore, even if we were to consider the order approving the supersedeas bond, that order nevertheless fails to reflect an "unmistakable intent to enter a partial final judgment under Rule 54(b)." Kelly, 908 F.2d at 1220.[6]

---

[6]Pilgrim also argues that Briargrove's seeking enforcement of the district court's "Final Judgment" demonstrates that Briargrove thought the order was appealable. This argument has no weight, however, because jurisdiction does not turn on the intentions of either party. The only relevant intent in the instant case is that of the district court as reflected or referenced in its order. That intent remains unknown to us.

In sum, nothing in the record before us indicates any intention to certify the district court's judgment as appealable under Rule 54(b).  <u>Kelly</u> describes the most lenient application of a Rule 54(b) certification as far as this circuit is concerned, and this case fails by a wide margin to meet that test.  We therefore lack jurisdiction to consider the district court's partial ruling on appeal.

IV

For the foregoing reasons, the appeal is

D I S M I S S E D.