United States Court of Appeals,
Fifth Circuit.

No. 90–2529.

GENE L. ACKERMAN, et al., Plaintiffs,

EMIL J. AMBERBOY, et al., Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORP., et al., Defendants,

Societe De Banque Privee, f/k/a Saudi European Bank, Defendant–Appellee.

Oct. 1, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before DUHÉ and RONEY,[1] Circuit Judges.[2]

DUHÉ, Circuit Judge.

I.

Appellants purchased limited partnership participation interests in an oil and gas investment program formed by Vanguard Group International, Inc. (VGI) in 1983. In consideration for their interests, each Appellant made a cash downpayment and executed a promissory note for the balance of the investment payable to the limited partnership or to the lender, who was to be identified later. Several months later, VGI assigned the promissory notes to Appellees, Saudi European Bank (the Bank), as the lender. The Bank received only the first annual payment due on the notes. When subsequent payments were not made and the surety company guaranteeing the notes failed, the Bank sought payment from Appellants, alleging that it was a holder in due course of the notes.

Appellants brought suit in Texas state court against the Bank and numerous other parties alleging various violations of federal and state securities laws and common law offenses in the sale

---

[1]Circuit Judge of the Eleventh Circuit, sitting by designation.

[2]Chief Judge Clark was a member of the panel when this case was argued and a question certified to the Texas Supreme Court. He has since resigned. Accordingly, this case is being decided by a quorum.

of the investments. The Federal Deposit Insurance Corp. (FDIC), receiver for one of the involved banks, removed the action to federal court. In December 1989, the Bank obtained a summary judgment against Appellants based on the district court's finding that the Bank was a holder in due course of Appellants' promissory notes. Appellant first moved to alter and amend the court's order granting summary judgment and the court's entry of final judgment on that order and then moved for reconsideration of the court's orders. The district court denied all motions and the propriety of the district court's summary judgment is now before us.

Appellants argue that the Bank was not a holder in due course of the promissory notes because the notes are not "negotiable instruments" as defined by the Texas Uniform Commercial Code (the "Code"). They reason that because the interest rate on the notes can be calculated only by reference to a source outside the notes themselves, a bank's published prime rate, the notes cannot be negotiable instruments.[3] The parties have stipulated to the applicable rate of interest and only the effect of that rate is at issue here.

After hearing argument in this case, this court certified the negotiability question to the Texas Supreme Court. On April 15, 1992, that Court issued its opinion in *Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793 (Tex.1992), enabling us to rule on Appellants' claims.

II.

---

[3]Appellants' promissory notes set forth the following statement regarding the interest to be charged:

> Interest on the principle amount remaining unpaid hereunder from time to time outstanding, at a rate per annum equal to the lesser of (a) the rate (the "Basic Rate") which is equal to the sum of the prime interest rate (the "Prime Rate") for short-term loans published by Lender, plus 2 percent (2%) per annum, which Basic Rate shall be variable and shall be adjusted for the term hereof, effective at the close of business on the day of any such change in the Prime Rate; or, (b) the maximum lawful rate of interest (the "Maximum Rate") permitted by applicable usury laws, and, interest shall be due and payable as it accrues on the outstanding balance of principle from time to time, on the same dates as, but in addition to said installments of principle....

Appellants first argue that the district court erred in granting the Bank's summary judgment motion and denying Appellant's Cross–Motion for Summary Judgment. We review summary judgment determinations *de novo. Fields v. Hallsville Independent School Dist.,* 906 F.2d 1017, 1019 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). The district court based its order adjudicating these motions on its finding that the Bank was a holder in due course.[4] Appellants challenge this holding on two grounds. First, they contend that the necessity of referring to a source external to the notes to calculate the applicable interest rate renders the notes nonnegotiable and defeats the Bank's argument that it is a holder in due course. Second, Appellants assert that there remain issues of material fact as to the Bank's knowledge at the time the notes were assigned to it of investor defenses, which knowledge would defeat the Bank's status as a holder in due course.

In *Amberboy v. Societe de Banque Privee,* the Texas Supreme Court authoritatively determined that promissory notes requiring interest to be charged at a rate that can only be determined by reference to a bank's published prime rate *are* negotiable instruments under the Code. 831 S.W.2d at 797. Texas law being contrary to Appellants' position, this argument fails.

We now turn to Appellants' second argument. Specifically, Appellants contend that the Bank was aware that VGI had violated various federal and state securities laws in its handling of Appellants' investments and that the Bank was aware that defenses existed to payment of the notes. Appellants

---

[4]Section 3.302 of the Code, in pertinent part, defines holder in due course:

> (a) A holder in due course is a holder who takes the instrument
>
>> (1) for value; and
>>
>> (2) in good faith; and
>>
>> (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Under Chapter 3 of the Code, "instrument" means "negotiable instrument." Section 3.102(a)(5).

assert that awareness of either of these facts would defeat the Bank's status as a holder in due course under the Code and that genuine issues of material fact exist as to these issues, making summary judgment inappropriate.

The district court concluded that the Bank could not be held liable under either federal or state securities laws where Appellants presented no evidence to refute the Bank's proof that it played no part in offering the interests to Appellants or in drawing up offering documents, and, in fact, did not become involved in the transaction at all until after approximately four months after Appellants signed the notes. On these facts, the district court correctly concluded that the Bank was not a "seller" of unregistered securities under federal securities law. *See Pinter v. Dahl,* 486 U.S. 622, 641–655, 108 S.Ct. 2063, 2075–2082, 100 L.Ed.2d 658 (1988) (a "seller" for purposes of § 12 of the Securities Act of 1933, 15 U.S.C. § 771, is one who passes title or solicits the purchase of a security); *Cyrak v. Lemon,* 919 F.2d 320, 324–25 (5th Cir.1990).[5] Because we find no dispositive Texas law on this issue, we follow federal securities case law. *See Huddleston v. Herman & MacLean,* 640 F.2d 534, 551 and n. 27 (5th Cir.1981) (applying federal case law defining "seller" to Texas Security Act issue in absence of contrary Texas authority), *aff'd in part and rev'd in part on different grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Accordingly, the district court was also correct in concluding that no material facts remained at issue as to Appellants' state securities law allegations.

In rejecting Appellants' argument that the Bank was aware that defenses existed to the payment of the notes, the district court concluded that Appellants presented "no facts or evidence to show that [the Bank] was anything other than a holder in due course who purchased the notes from VGI." To support their argument, Appellants only vaguely describe such defenses and fall far short

---

[5]The district court, in concluding that the Bank could not be a seller under federal securities law, relied on *Pharo v. Smith,* 621 F.2d 656 (5th Cir.1990). The United States Supreme Court explicitly rejected the test of "seller" status under § 12 espoused by this case: whether the potential seller's participation in the buy-sell transaction was a substantial factor in causing the transaction to take place. *Pinter v. Dahl,* 486 U.S. at 648–654, 108 S.Ct. at 2079–2082. Nonetheless, the test announced in *Pinter* was more restrictive than the "substantial factor" test of *Pharo,* and the district court's conclusion that the Bank was not a seller was correct.

of establishing that the Bank was aware of these alleged defenses. For instance, they contend that the Bank wrongfully disbursed funds to the general partner of VGI rather than to the individual partnerships and that the Bank was aware that its purchase of the notes violated the terms of the investment and the Confidential Memorandum. That the Bank may have wrongfully disbursed funds after its purchase of the notes does not affect its status as a holder in due course. Tex.Bus. & Comm.Code § 3.302(a). Furthermore, our review of the record supports the district court's conclusions that Appellants signed the notes knowing that Baker would fill in the name of the lender later; that the notes made clear that the lender would be a holder in due course; and that Appellants later signed powers of attorney and letters of estoppel authorizing and ratifying Baker's power to fill in the lender's name on the notes. Although Appellants insist the Bank violated or knew of violations of the Confidential Memorandum, they have failed to identify such violations. Appellants have failed to rebut the presumption that the Bank was a holder in due course. *See, e.g., Favors v. Yaffe,* 605 S.W.2d 342, 344 (Tex.Civ.App.1980—write ref'd n.r.e. 1981) (holder of note presumed to be holder in due course absent contrary evidence). Accordingly, we affirm the district court's order entering summary judgment on behalf of the Bank, as a holder in due course.

## III.

Appellants make several arguments with respect to the district court's entry of final judgment. First, they argue that it violated the requirements of Fed.R.Civ.P. 54(b).[6] Rule 54(b) allows a district court, after careful consideration, to certify as a final, appealable judgment a disposition of less than

---

[6]Rule 54(b) provides

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

all the claims or parties in a complex litigation. The district court must weigh a variety of factors to determine whether such a disposition is appropriate for Rule 54(b) certification and make an "express determination that there is no just reason for delay" in entering the judgment. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). We reverse such orders only if we find an abuse of discretion. *Id.* at 8, 100 S.Ct. at 1465.

The district court's order entering final judgment stated:

> On this day the Court considered Defendant Saudi European Bank, S.A.'s Motion for Entry of Final Judgment, and having determined that there is no just reason for delay, is of the opinion that it should be GRANTED. It is therefore
>
> ORDERED that with respect to the issues determined by summary judgment pursuant to a Memorandum and Order Decision dated December 19, 1989, the Court directs entry of a Final Judgment.

Appellants contend that the district court's failure to enumerate the factors it considered and the conclusions it reached in determining that there existed "no just reason for delay" constituted a *per se* abuse of discretion. They further contend that this conclusion was clearly unreasonable under *Curtiss–Wright. Id.* at 11, 100 S.Ct. at 1466.

While the parties prepared the briefs in this case, this court decided, en banc, *Kelly v. Lee's Old Fashioned Hamburgers, Inc.,* 908 F.2d 1218 (5th Cir.1990). In that case, we held that a district court need not mechanically recite the words "no just reason for delay" in order to certify a judgment as final under Rule 54(b). *Id.* at 1220. We stated

> If the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable[....]

*Id.* at 1220. The district court's order leaves no doubt that it intended to enter a final, appealable, partial judgment under Rule 54(b). Not only did the court "mechanically recite" the words "final judgment" twice in its order, but its order was in response to the Bank's Motion for Entry of Final

Judgment under Rule 54(b).  As we stated in *Kelly,* "[w]hen the court ... grants a motion requesting entry of judgment under Rule 54(b), the court expressly incorporates the entire rule by reference and signals its conclusions that the requirements of the rule have been met and entry of partial final judgment is proper."  *Id.* at 1220–21.

Appellants further argue that the district court's conclusion that there existed "no just reason for delay" was "clearly unreasonable" under *Curtiss–Wright* because related claims involving other parties[7] rest on the same factual and legal issues as these adjudicated claims.  446 U.S. at 11, 100 S.Ct. at 1466.  Whether we review the district court's decision to enter final judgment under the "clearly unreasonable" standard suggested by Appellants or under the abuse of discretion standard suggested by our case law,[8] we find no reversible error in that decision.  As we made clear in *H & W Industries v. Formosa Plastics Corp.* 860 F.2d 172, 175 (5th Cir.1988), the "cautionary language" in *Curtiss–Wright* directing the district court to consider claims remaining to be adjudicated when ruling on Rule 54(b) motions[9] is only cautionary.  In *H & W Industries,* we found no abuse of discretion where the district court certified as a final judgment its dismissal of an attempted monopolization claim while retaining jurisdiction over an antitrust claim between the same parties. *Id.*   In this case, the remaining claims which Appellants contend should prevent Rule 54(b) certification involve different parties.  The district court's certification was neither unreasonable nor an abuse of discretion.

---

[7]Specifically, Appellants identify claims involving Enterprise Finance Company and Mutual Fire, Marine and Inland Insurance Co.

[8]This circuit's post-*Curtiss–Wright* cases establish a two-part appellate review of Rule 54(b) certifications:  1) a *de novo* review as to whether more than one legal claim was presented, and 2) an abuse of discretion review as to whether entry of final judgment was appropriate under the facts of a particular case.  *Samaad v. City of Dallas,* 940 F.2d 925, 929–30 (5th Cir.1991);  *H & W Industries v. Formosa Plastics Corp.,* 860 F.2d 172, 175 (5th Cir.1988).  Appellants do not make any argument as to the first part of this test.

[9]The balancing test enunciated by *Curtiss–Wright* requires the district court to examine the relationship between adjudicated claims and dismissed parties with those claims and parties remaining in the action as well as efficiency considerations for the court system.  446 U.S. at 11, 100 S.Ct. at 1466.

Finally, Appellants contend that the district court's entry of final judgment in response to the Bank's Motion violated the notice and hearing requirements of the local rules governing motion practice.[10] They argue that this violated their due process rights by denying them adequate notice that the court was considering entering final judgment and an opportunity to respond to the Bank's motion. Appellants have had full opportunity during the course of this appeal to develop arguments which they would have raised had they had received the notice they now claim was their due. Having found no merit to these arguments, we will not now reverse the district court's order on the basis that it violated a local rule of practice.

IV.

For the reasons stated above, we affirm the order of the district court.

AFFIRMED.

---

[10]Specifically, Appellants argue that the district court violated Rule 6 of the Local rules of the United States District Court for the Southern District of Texas. They allege that the Bank filed its motion January 12, 1990. The motion did not contain an averment that the Bank had conferred with Appellants and that counsel did not agree about the disposition of the matter as required by Rule 6(A)(4)(a) and (b). Appellants did not receive notice of the motion until January 24, twelve days after it was filed, evidently because the Bank mailed Appellants' copy to an old address. The district court had until February 1 to enter judgment under Local Rule 6(D) and (E), but instead entered judgment on January 26, giving Appellants only two days to respond.